Cite as 2026 Ark. App. 75

# ARKANSAS COURT OF APPEALS

## DIVISION III

No. CV-24-378

| | |
|---|---|
| DOWNTOWN TEXARKANA, LLC<br>APPELLANT<br><br><br>V.<br><br><br>GRAYLEE CONSTRUCTION AND DEMOLITION, LLC; AND CITY OF TEXARKANA, ARKANSAS<br>APPELLEES | Opinion Delivered February 4, 2026<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CV-20-403]<br><br>HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Downtown Texarkana, LLC, appeals the January 13, 2024 judgment of the Miller County Circuit Court in favor of appellee City of Texarkana (City) in the amount of $223,000.[1] The circuit court also granted appellant $35,000 in attorney's fees for a total judgment against the City in the amount of $258,000.[2] Appellant argues on appeal that the circuit court (1) erred by utilizing the wrong measure of damages for this contract case; (2) erred in failing to direct a verdict as to damages for demolition and removal of debris; (3)

---

[1]The circuit court awarded appellant $45,000 for the fair market value of appellant's building destroyed by appellee Graylee Construction and Demolition, LLC (Graylee), and $178,000 for demolition costs.

[2]The City had an agreement with Graylee whereby Graylee would indemnify the City. Graylee also was ordered to pay the City $26,073.10 in attorney's fees.

erred in refusing to award prejudgment interest from the date of the total loss to the date of judgment; (4) abused its discretion in refusing to award the attorney's fee provided for in the contingent-fee contract between appellant and its attorney and thus failed to award appellant a full damages award; (5) erred in refusing to award court costs to appellant as the prevailing party; and (6) erred in failing to award the correct postjudgment interest rate upon the entire judgment from the date of judgment entry until paid to appellant. We affirm.[3]

The City condemned Regency House, a four-story building taking up two lots at 110 East Broad Street in Texarkana, as a public hazard. The City contracted with Graylee on May 26, 2020, to perform the demolition work for $310,000,[4] and it entered an indemnity contract with Graylee for any damage resulting from the demolition. The City also obtained a temporary-working easement from appellant, the owner of a two-story building located on a lot at 114 East Broad Street, allowing the City and its contractors to enter the property to perform the demolition. The easement stated that appellees would provide "roof protection to the building at 114 E. Broad St., parapet repairs, and repairs of any damage suffered to 114 E. Broad during construction activities." It further stated that "[t]he City, in connection with construction of the proposed improvements, shall restore Grantor's property to a condition substantially similar to its condition prior to construction[.]" Graylee started work shortly after executing the contract. On June 30, a portion of Regency House's wall collapsed

---

[3]This appeal was orally argued before this court on January 14, 2026.

[4]This amount was only for the demolition; it did not include haul off. The City stated that it expected to spend another $100,000 for disposal.

2

onto the roof of appellant's building, causing a total loss. The City subsequently condemned appellant's building as unrepairable and as a health and safety hazard. The City paid Graylee $176,272.50 for work already performed on Regency House and subsequently canceled its contract with Graylee. After appellant's efforts to resolve the problem with the City and Graylee failed, it filed a complaint against them on November 12, 2020, seeking damages for the loss of the building as well as demolition costs.

A jury trial took place on October 12–14, 2023. The circuit court directed a verdict in appellant's favor against the City on the issue of liability and allowed the issue of damages to be submitted to the jury. The circuit court also directed a verdict in Graylee's favor in appellant's action against it. The evidence adduced at trial showed that appellant had purchased the property in question for $15,000 in August 2015. The property was last assessed by the Miller County Assessor for $45,000 before the damage.[5] At some point, appellant listed the property for sale for $125,000, but it did not sell. Graylee described the property as being in bad condition[6] before its collapse. Graylee walked through appellant's property to get an idea of the condition of Regency House because Graylee was not allowed inside Regency House due to safety issues. After litigation had begun, appellant had a hard

---

[5]Appellant proffered an architect's report showing that a reconstruction of the collapsed building would cost approximately $4,069,735 (rate of $387.59 per square foot).

[6]Upstairs, there was a crack in the wall at least six feet long, the floors were spongy, the walls were unfinished, and the roof had exposed rafters. Downstairs, there were exposed wires, some drywall had been installed, and there were plumbing issues. There were no utilities at the property.

time finding a company willing to take on the demolition project. Appellant entered into a contract with Stan Excavating in April 2021 for demolition and removal for $401,938. Stan Excavating understood that appellant did not have the money at that time to pay for the work; however, appellant was to pay Stan Excavating with money received from its claims against appellees. At the time of the trial, Stan Excavating had completed the work for appellant. The City also contracted with Stan Excavating in early 2023 and paid $453,000 to complete the Regency House demolition and disposal. In the end, the City spent a total of $629,272.50 for the Regency House demolition and disposal. After being presented with this evidence,[7] the jury returned a verdict for appellant in the amount of $178,000 for demolition. The jury also awarded appellant $45,000 for the loss of its building. Appellant filed a timely notice of appeal as well as posttrial motions, which were either outright denied or denied by operation of law. This timely appeal followed.

Appellant argues as its first point on appeal that the circuit court erred by utilizing the wrong measure of damages for this contract case when it instructed the jury. A party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support giving the instruction.[8] We review the circuit court's failure to give a specific instruction under an abuse-of-discretion standard.[9] Abuse of discretion is a

_____

[7]The jury also viewed in person the vacant lots where Regency House and appellant's building once stood.

[8]*Old Dominion Freight Line, Inc. v. McMillion*, 2025 Ark. App. 400, 715 S.W.3d 490.

[9]*See id.*

4

high threshold that does not simply require error in the circuit court's decision but requires that the court act improvidently, thoughtlessly, or without due consideration.[10] The circuit court granted Graylee's motion in limine to prevent appellant from presenting evidence reflecting the cost of new construction; however, appellant was allowed to proffer the report by architect W. Mark Bailey reflecting that the cost to reconstruct appellant's collapsed building would be $4,069,735. At the conclusion of the evidence, the circuit court instructed the jury that it should grant appellant the fair market value of its building at the time of the accident. Appellant argues that this was erroneous. We disagree. Arkansas Model Jury Instruction–Civil 2223, which deals with the measure of permanent damages to real property, states that the amount of damages is the difference in the fair market value of the land immediately before and immediately after the occurrence. Where the injury is both total and permanent, as here, the measure of damages would be the market value of the property destroyed.[11] This is exactly the measure the circuit court instructed the jury on. Replacement cost of a new building cannot prove damages for the destruction of the existing building.[12] Accordingly, we affirm.[13]

---

[10]*King v. Barton*, 2023 Ark. App. 388, 675 S.W.3d 458.

[11]*See Mo. Pac. R.R. Co. v. Cements*, 225 Ark. 268, 281 S.W.2d 936 (1955).

[12]*See Barnes v. Young*, 238 Ark. 484, 382 S.W.2d 580 (1964).

[13]We note that during oral argument, appellant's counsel conceded that appellant was not entitled to a brand new building and admitted that appellant had not received an estimate of the cost to rebuild the building to its pre-existing condition.

As its second point on appeal, appellant essentially argues that the evidence was insufficient to support the jury's damages award for demolition. We note that appellant did not move for directed verdict on this issue; however, it is not precluded from challenging the jury verdict on appeal. Pursuant to Arkansas Rule of Civil Procedure 50(e), a party who has the burden of proof may, on appeal, challenge the sufficiency of the evidence supporting a jury verdict adverse to that party and may do so without making a directed-verdict motion to the circuit court.[14] When the sufficiency of the evidence to support a jury verdict is the issue on appeal, the standard of review is whether the verdict is supported by substantial evidence.[15] Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other.[16] The jury is the sole judge of witness credibility and the weight and value of the evidence.[17] It may believe or disbelieve the testimony of any one or all the witnesses, though such evidence is uncontradicted and unimpeached.[18] We have frequently held that when it is impossible to know the basis for the jury's verdict, we will not question or theorize about the jury's findings.[19] We hold that

---

[14]*Mitchell v. Fells*, 2010 Ark. App. 663, 376 S.W.3d 543.

[15]*Id.*

[16]*Id.*

[17]*Dicholkar v. McMillion*, 2024 Ark. App. 155, 686 S.W.3d 542.

[18]*Id.*

[19]*Id.*

the verdict is supported by the evidence. The evidence shows that Regency House was twice as big as appellant's building[20] and that the City initially contracted with Graylee to do demolition work on Regency House for $310,000. Appellant contracted with Stan Excavating to perform the demolition and removal work of its building for almost $402,000. The City subsequently contracted with Stan Excavating and paid over $450,000 to complete the demolition work Graylee did not finish and for disposal of Regency House. At the time of the hearing, Stan Excavating had completed both jobs, and although it had been paid by the City, it was still awaiting payment by appellant. The jury was also allowed to visit the lots where Regency House and appellant's building once stood. After being presented with the evidence, the jury awarded appellant $178,000 in damages for demolition of its building. We affirm.

Appellant argues in its third point that the circuit court erred in refusing to award prejudgment interest from the date of the total loss to the date of judgment. Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment.[21] It is proper to award prejudgment interest when there is a method to determine the value of the property at the time of the injury.[22] The fact-finder must be able

---

[20]Regency House was four stories on two lots; appellant's building was two stories on one lot.

[21]*Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 217 S.W.3d 797 (2005).

[22]*Crain v. Crain*, 2025 Ark. App. 122, 708 S.W.3d 356.

to ascertain the amount value by mathematical computation, or if the evidence furnishes data that makes it possible, to compute the amount without reliance on opinion or discretion.[23] If damages are not by their nature capable of exact determination, both in time and amount, prejudgment interest is not recoverable.[24] Here, the value of the property and cost of demolition were not capable of determination at the time of the loss. The value did not become apparent until after the jury exercised its discretion. Therefore, prejudgment interest was not appropriate in this case. We affirm.

For its fourth point on appeal, appellant argues that the circuit court abused its discretion in refusing to award the attorney's fees provided for in the contingent-fee contract between appellant and its attorney and thus failed to award the full measure of damages to appellant. We review the circuit court's decision to award attorney's fees and the amount of the award for an abuse of discretion.[25] There is no fixed formula for determining what constitutes a reasonable amount for attorney's fees.[26] However, a court should be guided in that determination by the following long-recognized factors: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues

---

[23]*Id.*

[24]*Id.*

[25]*King, supra.*

[26]*Id.*

8

involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed on the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.[27] Due to the circuit court's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the circuit court in assessing the applicable factors.[28] Attorney's fees are not allowed except where expressly provided for by statute.[29] Arkansas Code Annotated section 16-22-308[30] allows appellant, as the prevailing party in this breach-of-contract action, to receive reasonable attorney's fees. The evidence showed that appellant had a 40 percent contingency-fee contract with its attorney. After the trial, appellant submitted a motion for attorney's fees in the amount of $148,666.67, 40 percent of appellant's total recovery. The circuit court found that appellant's attorney was entitled to $35,000 in attorney's fees (one hundred hours multiplied by $350 an hour). Appellant maintains that it was erroneous for the circuit court to not grant its attorney the contingency-fee amount. Although a contingency-fee contract existed in this case, it was but one factor to consider.[31] The circuit

---

[27]*Id.*

[28]*Id.*

[29]*Running M Farms, Inc. v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 371 Ark. 308, 265 S.W.3d 740 (2007).

[30](Repl. 1999).

[31]*Running M Farms, supra.*

court chose to base its award of attorney's fees on the amount of hours worked on the case and the acceptable hourly rate. We cannot say that this was an abuse of discretion. We affirm.

As its fifth point on appeal, appellant argues that the circuit court erred in refusing to award it costs as the prevailing party. Arkansas Rule of Civil Procedure 54(d)(1) states that costs shall be allowed to the prevailing party if the court so directs, unless statute or rule makes an award mandatory. Here, when appellant filed its motion for attorney's fees, it also asked for costs. However, it failed to itemize the costs it sought to recover or even present the circuit court with an amount. Rule 54(d)(1) allows the circuit court to decide whether costs should be awarded, and in this case, the circuit court did not award any costs.[32] We cannot say that this was in error. Accordingly, we affirm.

Finally, appellant argues that the circuit court erred in failing to award the correct postjudgment interest rate on the entire judgment from the date of judgment entry until it was paid to appellant. Postjudgment interest accrues from the date of the order setting the fee amount in dollars and cents.[33] Here, the circuit court stayed the interest for ten days and then ordered that it accrue at a rate of 7.5 percent per annum, which it stated was based on

---

[32]In the circuit court's factual findings and conclusions, it stated that it was awarding attorney's fees in the amount of $35,000, and no additional amount was awarded. In the judgment, it listed $35,000 for attorney's fees and costs, but it is clear that only attorney's fees were awarded.

[33]*See Daniel v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 207, 520 S.W.3d 258.

Arkansas Rule of Civil Procedure 62. We find no error with the circuit court's award, and we affirm.[34]

Affirmed.

WOOD and HIXSON, JJ., agree.

*David J. Potter*, for appellant.

*Clausen Miller P.C.*, by: *Michael J. Raudebaugh, pro had vice*; and *Melinda S. Kollross, pro hac vice*; and *Wright Lindsey & Jennings LLP*, by: *Patrick D. Wilson*, for separate appellee Graylee Construction and Demolition, LLC.

*C. Burt Newell*, for separate appellee City of Texarkana, Arkansas.

---

[34]Appellant's argument on this point may be relevant if this case were remanded; however, we affirm the circuit court's judgment on all points.